UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TRUSTEES OF THE BUILDING TRADE
EDUCATIONAL BENEFIT FUND, THE BUILDING
TRADES ANNUITY BENEFIT FUND, BUILDING
TRADES WELFARE BENEFIT FUND and
the ELECTRICIAN'S RETIREMENT FUND,

                        Plaintiffs,            **REPORT AND RECOMMENDATION**

    -against-            CV 23-5610 (RER) (AYS)

PREFERRED ELECTRIC II, INC. and
LEONARD BARBARZO, INDIVIDUALLY,

                        Defendants.
------------------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

    Plaintiffs, The Trustees of the Building Trades Benefit Fund, the Building Trades Annuity Benefit Fund, the Building Trades Welfare Benefit Fund, and the Electrician's Retirement Fund (the "Funds" or "Plaintiffs"), commenced this action on July 25, 2023 against Defendants, Preferred Electric II Inc. ("Preferred") and Leonard Barbarzo ("Barbarzo") (collectively, "Defendants"), pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, as amended, for delinquent contributions that Preferred failed to pay under the parties' collective bargaining agreement ("CBA"). (See generally Compl., Docket Entry ("DE") [1]).

    Plaintiffs filed an Amended Complaint on December 19, 2023. (DE [15].) Both Preferred and Barbarzo failed to answer either the Complaint or the Amended Complaint or otherwise appear in this action. On October 21, 2024, Plaintiffs filed a request for a certificate of default with the Clerk of the Court for both Preferred and Barbarzo, (DE [21]), which was granted on October 24, 2024. (DE [22].) On January 19, 2025, Plaintiffs filed the within motion for default

1

judgment (DE [23]), which was referred to the undersigned by Judge Reyes on May 13, 2025, for a report and recommendation as to whether the motion should be granted and what, if any, damages should be awarded. For the following reasons, this Court respectfully recommends that Plaintiffs' motion be granted in its entirety.

## BACKGROUND

The Plaintiff Funds are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA. (Am. Compl. ¶ 5.) Defendant Preferred is a domestic corporation doing business in the State of New York with its principal place of business in Lindenhurst, New York. (Id. ¶ 8.) Barbarzo is an officer, agent, partner and/or principal owner of Preferred. (Id. ¶ 9.) At all relevant times, Preferred has been a party to a CBA with the United Electrical Workers of America IUJAT, Local 363 (the "Union") by virtue of its membership in the Building Industry Electrical Contractors Association (the "Association") and through an Assumption of Agreement made in connection with the Association (the "Assumption Agreement"). (Id. ¶ 12.)

Pursuant to the parties' CBA, the Trust Indenture Agreement, the Participation Agreement, and the Funds' Policy for Collection of Delinquent Contributions (the "Collections Policy"), Preferred was required to submit contribution reports setting forth the hours that each of its employees worked and the amount of contributions due pursuant to the rate schedules set forth in the CBA for all work performed by its employees covered by the CBA, and to remit such monetary contributions in accordance with the CBA and the Collections Policy. (Id. ¶ 13; Aff. of Kevin Chavarria, dated Jan. 18, 2025 ("Chavarria Aff."), ¶ 2; Aff. of Lauren Kugielska, dated Jan. 18, 2025 ("Kugielska Aff."), ¶ 6 and Exs. A and B, annexed thereto.) The CBA also obligated Preferred to permit and cooperate with the Funds or their agents in an audit of its books and

records for the purpose of ascertaining the amount of fringe benefit contributions due the Funds and verifying the accuracy of Preferred's contribution reports. (Am. Compl. ¶ 13.) Preferred failed to cooperate and refused to allow an audit by the Funds for the period July 15, 2022 through November 30, 2022. (Id. ¶ 15.) Preferred further failed to submit contribution reports, as well as fringe benefit contributions, for the period August 1, 2022 through November 30, 2022, and the period January 1, 2023 through March 31, 2023. (Chiavarra Aff. ¶ 4.)

> Section 2, Paragraph 11 of the Collections Policy provides as follows:
>
> In the event an employer has not submitted a remittance report by the Contribution Due Date . . . for the purpose of determining the amount of [d]elinquent [c]ontributions owed to the Funds, the Boards of Trustees shall presume that the employer is obligated to contribute for the greatest number of hours for which the employer was required to contribute in any month during the immediately preceding twelve (12) consecutive month period plus 10% . . . .

(Kugielska Aff., Ex. B; Chiavarra Aff. ¶ 3.) Pursuant to ERISA, the CBA, and the Collection Policy, upon the failure to pay contributions as they become due, Preferred is also obligated to pay the following: the additional amount of twenty percent (20%) of the total sum of contributions due as liquidated damages; interest on the unpaid contributions for the delinquency period; audit fees, and attorney's fees. (Am. Compl. ¶ 17; Chiavarra Aff. ¶ 9; Kugielska Aff. ¶ 12.)

The Funds also seek to hold Barbarzo liable individually pursuant to his role as a fiduciary within the meaning of ERISA. (Am. Compl. ¶ 40.) Barbarzo owned and controlled Preferred and made all decisions on behalf of Preferred. (Id. ¶¶ 41-42.) By not permitting an audit and by failing to properly remit fringe benefit contributions to the Funds, Barbarzo is individually and personally liable for any ERISA violations by Preferred. (Id. ¶¶ 45-46.)

As set forth in Plaintiffs' motion for default judgment, Plaintiffs seek the following damages: (1) unpaid contributions in the amount of $6,645.76 for the period August 1, 2022

3

through November 30, 2002; (2) unpaid contributions in the amount of $2,805.00 for the period January 1, 2023 through March 31, 2023; (3) interest on the unpaid contributions, as of January 18, 2025, in the amount of $5,599.81, with interest continuing to accrue; (4) liquidated damages in the amount of $1,890.15; and, (5) an additional ten percent penalty on the unpaid contributions, as set forth in the Collections Policy, in the amount of $945.08. Plaintiffs also seek their attorney's fees and costs in the amount of $6,064.84.

## DISCUSSION

I.  <u>Legal Standard</u>

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure, which provides for a two-step process. <u>See</u> Fed. R. Civ. P. 55; <u>Priestley v. Headminder, Inc.</u>, 647 F.3d 497, 504-05 (2d. Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. <u>See</u> Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. <u>See id.</u>

Where a default occurs, the well-pleaded factual allegations set forth in the Complaint are deemed to be true. <u>See</u> <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>see also</u> Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied"). However, "[i]t is well established that a party is not entitled to a default judgment as a matter of right; rather the entry of a default judgment is entrusted to the sound discretion of the court." <u>Allstate Ins. Co. v. Howell</u>, No. 09-cv-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."

Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Ferrara v. Tire Shop Ctr., No. 14-cv-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015). Accordingly, the court must determine whether a plaintiff's allegations establish liability as a matter of law. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("[P]rior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law.") (internal quotation omitted).

II.    Liability

Pursuant to Section 515 of ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; see also LaBarbera v. J.D. Collyer Equip. Corp., 337 F.3d 132, 134 (2d Cir. 2003). Here, Article 25 of the CBA obligates Preferred to remit benefit contributions to the Funds in accordance with the terms of the CBA and the Collections Policy. (Kugielska Aff. ¶ 6 and Ex. A, Art. XVII.)

Plaintiffs allege in the Amended Complaint and the affirmations in support of their motion for default judgment that Preferred failed to remit $9,450.76 in employee benefit contributions, all of which remains due and owing. (Chiavarra Aff. ¶ 5-7; Kugielska Aff. ¶ 14.) Based on the allegations in the Amended Complaint, as well as the Affirmations of Kevin Chiavarra, the Fund Administrator for the Funds, and Lauren Kugielska, counsel for the Funds, which substantiate these allegations, the Court concludes that there is a basis for liability for

violation of ERISA based on Preferred's and Barbarzo's breach of the CBA. Accordingly, the Court respectfully recommends that Plaintiffs' motion for default judgment be granted.

III. Damages

Although a default judgment entered on the well-pleaded allegations in a complaint establishes a defendant's liability, a plaintiff must still prove damages. See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012); Credit Lyonnai Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). Plaintiffs herein seek unpaid contributions, interest, and liquidated damages, as specified in ERISA and the CBA, as well as attorney's fees and costs.

A. Delinquent Contributions

As stated above, Preferred failed to remit contributions in the amount of $6,645.76 for the period August 1, 2022 through November 30, 2022 and $2,805.00 for the period January 1, 2023 through March 31, 2023, for a total amount due and owing of $9,450.76. (Chiavarra Aff. ¶¶ 4-7; Kugielska Aff. ¶ 14; Statement of Damages, DE [26].) Accordingly, this Court recommends that Plaintiffs be awarded $9,4560.76 in damages representing Preferred's delinquent contributions.

B. Interest

Section 502(g)(2)(B) of ERISA mandates an award of interest on unpaid contributions. See 29 U.S.C. § 1132(g)(2)(B). Pursuant to the Funds' Collection Policy, the rate of interest on delinquent contributions is calculated at the prime rate plus two percent (2%) for the month the contributions were owed, compounded daily. (Chiavarra Aff. ¶ 8; Kugielska Aff., Ex. B.) Applying the foregoing interest rates, Plaintiffs calculated the interest due and owing on the unpaid contributions to be $5,599.91 as of January 18, 2025, with interest continuing to

accrue at the forgoing rate through the date of judgment herein. (Chiavarra Aff. ¶ 8; Statement of Damages, DE [26].)

Based on the foregoing, this Court respectfully recommends that Plaintiffs be awarded $5,599.81 in interest on the unpaid contributions as of January 18, 2025, as well as additional interest to be calculated at the prime rate plus two percent, compounded daily, through the date of judgment herein.

C. <u>Liquidated Damages</u>

Both the Collections Policy and Section 502(g)(2)(C) of ERISA provide for an award of liquidated damages. <u>See</u> 29 U.S.C. § 1132(g)(2)(C). Here, the Collections Policy specifies that "liquidated damages shall be . . . 20% of the [d]elinquent [c]ontributions . . . ." (Chiavarra Aff. ¶ 9; Kugielska Aff., Ex. B, § 6(a)(b).) As demonstrated by the allegations of the Complaint and Chiavarra's Affidavit, Plaintiffs calculated Preferred's liquidated damages, in accordance with the provisions of the Collections Policy, to be $1,890.15. (Chiavarria Aff. ¶ 9; Statement of Damages, DE [26].) Preferred has taken no action to challenge this assessment. As Plaintiffs have demonstrated their right to recover liquidated damages, this Court respectfully recommends that liquidated damages be awarded in the amount of $1,890.15.

D. <u>Ten Percent of the Principal Amount</u>

As stated above, the Collections Policy provides that where an employer does not submit a remittance report by the Contribution Due Date, when calculating the delinquent contributions due, it is presumed that "the employer is obligated to contribute for the greatest number of hours for which the employer was required to contribute in any month during the immediately preceding twelve (12) consecutive month period plus 10% . . . ." (Kugielska Aff., Ex. B, § 2, ¶ 11.) Here, the Funds calculated this amount to be $945.08, representing ten percent

7

of the total unpaid contributions due and owing. (Chiavarra Aff. ¶ 10; Statement of Damages, DE [26].) The Court respectfully recommends that the Funds be awarded the amount requested.

    E.    <u>Post-Judgment Interest</u>

Plaintiffs should also be awarded post-judgment interest, pursuant to 28 U.S.C. § 1961, which must be applied to "any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961; <u>see also</u> <u>Khurana</u>, 2017 WL 1251102, at *17. Accordingly, this Court recommends awarding post-judgment interest, to be calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered. <u>See</u> 28 U.S.C. § 1961(a) ("[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."); <u>see also</u> <u>Schipani v.McLeod</u>, 541 F.3d 158, 165 (2d Cir. 2008) (holding that post-judgment interest is mandatory and calculated pursuant to federal statute).

V.    <u>Attorney's Fees and Costs</u>

Both the CBA and ERISA entitle Plaintiffs to recover reasonable attorney's fees and costs. Plaintiffs seek $5,475.00 in attorney's fees and $589.84 in costs.

    A.    <u>Attorney's Fees</u>

As a general matter when determining attorney's fees, the "starting point" for calculating a "presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." <u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'") (quoting <u>Arbor Hill Concerned</u>

8

Citizens Neighborhood Assoc. v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008)). The Supreme Court has held that "the lodestar method produces an award that <u>roughly</u> approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." Perdue v. Kenny A., 559 U.S. 542, 551 (2010) (emphasis in original). "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" Id. at 553 (citation omitted); see also Arbor Hill, 522 F.3d at 190-91 (holding that a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours). This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.

The reasonableness of hourly rates is guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits." Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983). Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney who worked on the action. See Scott v. City of New York, 643 F.3d 56, 57 (2d Cir. 2011). Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." Perdue, 559 U.S. at 552.

9

Here, Plaintiffs seek to recover $5,475.00 in attorney's fees and have submitted Kugielska's Affirmation and contemporaneous billing records in support of their application. Plaintiffs seek reimbursement for services rendered by Kugielska, an associate in Plaintiffs' law firm, at a rate of $250.00 per hour. (Kugielska Aff. ¶¶ 19-21.) The time spent on this action by counsel totals 21.9 hours. (Kugielska Aff. ¶ 21.)

Plaintiffs' application is supported by contemporaneous time records that detail the tasks performed in connection with this action, as well as the time expended on each task. (Kugielska Aff. ¶ 21.) Having reviewed the documents submitted, this Court finds both the number of hours expended and the hourly rates to be reasonable. See Trustees of Pavers and Road Builders Dist. Council Welfare, Pension, and Annuity Funds v. Rici Corp., No. 23-CV-5856, 2024 WL 4314958, at *8 (E.D.N.Y. Aug. 19, 2024) ("In ERISA matters, courts in the Eastern District of New York have approved hourly rates of $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals."). Accordingly, the Court respectfully recommends that Plaintiffs be awarded $5,475.00 in attorney's fees.

B.  Costs and Disbursements

Plaintiffs also seek a total of $589.84 in costs and disbursements in connection with the instant action. (Kugielska Aff. ¶ 15.) These costs are comprised of: (1) $402.00 for the court filing fee; and (2) $187.84 for process server fees. (Id.)

Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable. See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). However, the party seeking to recover costs "bears the burden of adequately documenting and itemizing the costs requested." Ganci v. U.S. Limousine Serv. Ltd., No. 10-cv-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (quoting Pennacchio v. Powers, No. 05-cv-985, 2011 WL 2945825, at

10

*2 (E.D.N.Y. July 21, 2011)). The costs for which Plaintiffs seek to recover are those ordinarily associated with litigation and this Court finds them to be reasonable. Accordingly, the Court respectfully recommends that Plaintiffs be awarded $589.84 in costs and disbursements.

## RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that Plaintiffs' motion for default judgment be granted, and that Plaintiffs be awarded the following: (1) unpaid contributions in the amount of $9,450.76 covering the periods August 1, 2022 through November 30, 2022 and January 1, 2023 through March 31, 2023; (2) interest on the unpaid contributions in the amount of $5,599.81 as of January 18, 2025, with additional interest to be calculated at the prime rate plus 2%, compounded daily, through the date of judgment herein; (3) $1,890.15 in liquidated damages; (4) $945.08, representing the additional ten percent due on unpaid contributions, as required by the Collections Policy; (5) attorney's fees in the amount of $5,475.00; and, (6) $589.84 in costs.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for Plaintiffs. Further, the Court is directing Plaintiffs to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendants at their last known address(es), and to file proof of service on ECF, by August 28, 2025. Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of

11

this report and recommendation either by the District Court of Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

**SO ORDERED:**

Dated: Central Islip, New York
August 26, 2025

/s/     Anne. Y. Shields
ANNE Y. SHIELDS
United States Magistrate Judge